| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

| FREDERICK BALDEO, | **MEMORANDUM & ORDER** |
| Plaintiff, | |
| – against – | |
| WENDY KEISER-O'NEILL, THE CITY OF NEW YORK, NICHOLAS BARNARD, and MICHAEL POTENZA, | 17-cv-5284 (ERK) (RML) |
| Defendants. | |

Korman, *J.*:

  Frederick Baldeo alleges that he was falsely arrested and maliciously prosecuted by Detective Nicholas Barnard, Lieutenant Michael Potenza, and the City of New York based on trumped-up charges by his former employer Wendy Keiser-O'Neill. Baldeo has asserted claims against all of them under 42 U.S.C. § 1983, as well as under 42 U.S.C. § 1985 and New York state law. Because Keiser has failed to appear or otherwise defend this action, Baldeo has moved for a default judgment against her. The other defendants, however, have moved to dismiss Baldeo's complaint, arguing, among other things, that the officers had probable cause to arrest.

## Background

  Frederick Baldeo's complaint alleges the following, which I accept as true while deciding the pending motions. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). Baldeo is a teacher who, in March 2004, also began working for Wendy Keiser-O'Neill's physical therapy and chiropractic business. Compl. ¶¶ 7, 8, 16. On August 29, 2016, he arrived at the business and found the locks changed. *Id.* at ¶ 17. He saw a handwritten sign on the door stating "Access Authorized by Business Owner Only Dr. Wendy Keiser." *Id.* And he also noticed that the security cameras on the first and basement floors had been "tampered with," and that the basement storage-room door

1

had been "broken down" with a hammer and crow bar next to it. *Id.* Baldeo called the police and filed a complaint. *Id.* at ¶ 18.

The next day, Baldeo returned to the business. As he approached the premises, he encountered Keiser. *Id.* at ¶ 19. She "physically stopped" him from entering and called the police, who then "further prohibited" him from entering. *Id.* Keiser told Detective Nicholas Barnard that, on August 6, 2016, she had fired Baldeo and changed the locks to the business. *Id.* at ¶ 21; *see also* Criminal Compl., ECF Dkt. No. 19-1.[1] She further stated that, on August 30, Baldeo broke down the business's door and damaged its lock. Compl. ¶ 21. She claimed that he took multiple items from the business, including insurance checks, computer programs, and patient files. *Id.* Those items, Kaiser averred, belonged to the business, and Baldeo had no authority to take them, or even to enter or remain in the building. *Id.*

At some point thereafter, Baldeo produced and submitted to Detective Barnard and Lieutenant Michael Potenza over twelve years of paperwork from the business. *Id.* at ¶ 23. Baldeo did so, he said, "to show that the property was not stolen." *Id.* Upon receiving the paperwork, Detective Barnard allegedly admitted to Baldeo that the paperwork was not stolen. *Id.* Detective Barnard also "admitted that he had kicked Defendant Keiser out of the precinct on multiple occasions and referred to her as 'that crazy woman.'" *Id.*

On September 12, 2016, Baldeo was arrested and charged with third-degree burglary, petit larceny, and fifth-degree criminal possession of stolen property. *Id.* at ¶ 20.[2] After his arrest, Baldeo was held at the precinct "for hours without food, water, or medical care," despite the fact

---

[1] Because Baldeo's complaint incorporates the criminal complaint by reference, I consider it on this motion. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).
[2] I note that it is not entirely clear from Baldeo's complaint whether his arrest occurred before or after he turned over the paperwork to the officers. But I believe the best reading of his complaint is that he was arrested after doing so. *See* Compl. ¶ 23 ("Despite these admissions, Det. Barnard still arrested Plaintiff Baldeo and issued him a Desk Appearance Ticket.").

2

that he is a diabetic. *Id.* at ¶ 22. He was also held in handcuffs and "subjected to repeated interrogation, false accusations, and humiliation by Det. Barnard and Lt. Potenza." *Id.*

Baldeo was arraigned on a complaint, after which he was "released on his own recognizance." *Id.* at ¶ 24. He appeared in criminal court three more times before the District Attorney dismissed the case on March 13, 2017. *Id.* at ¶ 26–27.

In September 2017, Baldeo sued Keiser, the City of New York, Detective Barnard, and Lieutenant Potenza under 42 U.S.C. § 1983 for deprivation of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. *Id.* at ¶¶ 30–35. He alleged, specifically, claims of false arrest and malicious prosecution, *id.* at ¶¶ 36–47, along with a claim of conspiracy under 42 U.S.C. § 1985, *id.* at ¶¶ 48–49, and several state law claims, *id.* at ¶¶ 50–86.

Two motions are now before me. First, the City of New York, Detective Barnard, and Lieutenant Potenza ("the City Defendants") have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Second, Baldeo has moved for a default judgment against Keiser, who has failed to appear in this action.

## Discussion

### I. *The City Defendants' Motion to Dismiss.*

#### A. *Standard of review.*

On a motion to dismiss under Rule 12(b)(6), I must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Goldstein*, 516 F.3d at 56 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). At the same time, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words,

the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

    B. *Baldeo's false-arrest claim fails because probable cause existed to arrest him.*

"Probable cause is a complete defense to a constitutional claim of false arrest . . . ." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). This is true "regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Officers have probable cause when they "have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Here, Detective Barnard had been told by Keiser that Baldeo had broken into her business, damaged the door and its lock, and stolen things. Such information from a putative victim generally will suffice to establish probable cause "unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Baldeo argues that such were the circumstances here; he contends that Detective Barnard was, or should have been, aware of various "indicia of unreliability" that undermined Keiser's credibility. *See* Pl.'s Mem. ¶ 16 (quoting *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003)). Baldeo observes that Detective Barnard was actually quite familiar with Keiser—he had kicked her out of the precinct multiple times and had referred to her as "that

crazy woman." Additionally, Detective Barnard presumably would have known that Keiser and Baldeo were not strangers but rather had a prior business relationship. And Detective Barnard knew that Baldeo had produced to him over twelve years of paperwork from the business—an act that apparently prompted Detective Barnard to say that the paperwork was not stolen.

      I conclude, however, that, under "the totality of the circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), Detective Barnard had probable cause to arrest Baldeo. Significantly, Baldeo submitted to the officers paperwork from the business, which demonstrates that he *had* entered the business and taken things, thus corroborating an important aspect of Keiser's complaint. Indeed, that Baldeo took the paperwork was suspicious—if his version of the facts was true, why did he take the paperwork? Baldeo has nowhere explained why he did so. And even if he had an innocent explanation, probable cause does not vanish just because an "innocent explanation may be consistent with the facts alleged." *Panetta*, 460 F.3d at 395 (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)). All Detective Barnard needed was a "reasonable basis for believing there [was] probable cause." *Id.* at 396 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). Moreover, I observe that Keiser did not complain to the police anonymously; she fully identified herself. *Cf. Florida v. J.L.*, 529 U.S. 266, 270 (2000) (contrasting "a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated" with an anonymous caller); *Adams v. Williams*, 407 U.S. 143, 146 (1972). At the end of the day, Detective Barnard had a victim-complaint along with significant corroborating evidence (passing over the fact that Baldeo himself alleges that the business was, in fact, broken into). Under these circumstances, Detective Barnard had probable cause to believe that Baldeo, at the very least, had committed criminal

5

possession of stolen property in the fifth degree, *see* N.Y. Penal Law § 165.40, if not the other crimes for which he was charged.

That Detective Barnard allegedly admitted to Baldeo that "the paperwork was not stolen" does not impact the analysis. First, the basis for this statement is not clear. Second, and more significantly, the probable cause inquiry "is an objective one that focuses on the facts available to the arresting officer at the time of the arrest." *Finigan v. Marshall*, 574 F.3d 57, 61–62 (2d Cir. 2009). As the Supreme Court has put it, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, *viewed from the standpoint of an objectively reasonable police officer*, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)) (emphasis added). "We do not examine the subjective understanding of the particular officer involved." *Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014); *see also id.* at 541 (Kagan, J., concurring) ("[A]n officer's 'subjective understanding' is irrelevant: As the Court notes, '[w]e do not examine it' at all." (second alteration in original)). Accordingly, the reasonableness of Detective Barnard's actions is evaluated "not [by] his statement of how he interpreted the [evidence]—a subjective inquiry—but rather [by] what the [evidence] itself shows." *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 388 (S.D.N.Y. 2009) (adopting Report & Recommendation).

The prior business relationship between Baldeo and Keiser also does not undermine Keiser's credibility. In arguing otherwise, Baldeo relies on *Mistretta v. Prokesch*, 5 F. Supp. 2d 128 (E.D.N.Y. 1998). There, Judge Gleeson explained that "when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation," and when that relationship "is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." *Id.* at 133. That is

because "[s]ome people have axes to grind." *Id.* But *Mistretta* involved a complaint "made by one spouse against another in the midst of divorce proceedings," where "the motive to falsify an accusation was patent." *Id.* at 134. It was a case where the facts, taken as a whole, demonstrated that the complainant's accusations could not be trusted. *Id.* It does not follow from *Mistretta* that the existence of a prior relationship will always vitiate probable cause. *See D'Alessandro v. City of New York*, 13-cv-930, 2016 WL 6962516, at *7–8 (E.D.N.Y. Nov. 28, 2016), *aff'd*, 713 F. App'x 1 (2d Cir. 2017); *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 437 (S.D.N.Y. 2014), *aff'd*, 590 F. App'x 112 (2d Cir. 2015). "Indeed, often, the fact that the accused and accuser know each other cuts the other way, by adding credibility to the identification." *D'Alessandro*, 2016 WL 6962516, at *7.

Here, Baldeo has not alleged any facts demonstrating that his relationship with Keiser "[gave] rise to a motive for a false accusation." *Mistretta*, 5 F. Supp. 2d at 133. He "does not allege that he and the complainant had an acrimonious relationship," *D'Alessandro*, 2016 WL 6962516, at *8, and it is unclear from Baldeo's complaint why Keiser would have any axe to grind at all. The mere fact that Baldeo and Keiser had a prior business relationship does not automatically discredit Keiser's allegations. If anything, their prior relationship *added* credibility to Keiser's identification of Baldeo as the one who committed the complained-of acts.[3]

Baldeo is also incorrect to argue that the City Defendants' motion should be denied because of a factual dispute, which he contends exists because the City Defendants, in their

---

[3] In fact, *Mistretta*—the case on which Baldeo heavily relies—supports a probable cause finding here. *Mistretta* teaches that when reason exists to doubt the credibility of a victim-complaint (such as a prior relationship giving rise to a motive to lie), "the officer may need to investigate further." *Mistretta*, 5 F. Supp. 2d at 133. In *Mistretta*, the officer did just that, and his investigation turned up evidence that corroborated the complaint and established probable cause. *See id.* at 134. Here, too, Detective Barnard did not arrest Baldeo simply based on Keiser's complaint. Rather, he collected evidence—the paperwork that Baldeo turned over. That was enough to cross the probable cause threshold.

motion, described as "rather implausible" the allegation that Detective Barnard called Keiser a "crazy woman." That throw-away comment in the City Defendants' briefing is irrelevant. On a motion to dismiss, I assume that all the facts in the complaint are true, including that Detective Barnard referred to Keiser as a crazy woman.

Finally, Baldeo's reliance on *Bullard v. City of New York* is misplaced. *Bullard* involved various complaints that contained several "indicia of unreliability." 240 F. Supp. 2d at 298. For instance, the first complainant had "fraudulently represented himself to the arresting officers as a psychiatrist and employee of the United States Marshal Service." *Id.* And the second complaint in *Bullard* was made weeks after the incident at issue, and "[the accused] witnessed [the officer] receive an amorous kiss from [the complainant] allegedly as a reward for [the accused's] arrest." *Id.* Detective Barnard's prior history with Keiser—his kicking her out of the precinct and his vague characterization of her as a "crazy woman"—is not analogous to the several, specific "indicia of unreliability" in *Bullard*. But perhaps more significantly, Detective Barnard, unlike the officers in *Bullard*, had evidence corroborating the victim-complaint—the turned-in paperwork. *See id.* ("[T]here were sufficient indications that the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue the claims of Mr. Bullard and his lawyer that Mr. Bullard was innocent.").

In sum, taking all the allegations in Baldeo's complaint as true, Detective Barnard had probable cause to arrest. Baldeo's prior business relationship with Keiser, and Detective Barnard's nebulous history with her, do not vitiate probable cause in the face of a victim-complaint corroborated by significant, objective evidence. Accordingly, Baldeo's false-arrest claim fails.

C. *Baldeo's malicious-prosecution claim fails.*

Because probable cause existed to arrest him, Baldeo's malicious-prosecution claim fails as well. Probable cause at the time of arrest will defeat a malicious-prosecution claim unless "the groundless nature of the charge [has been] made apparent by the discovery of some intervening fact" and the prosecution is nonetheless continued. *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *see also Betts*, 751 F.3d at 82. Baldeo has not alleged any intervening, post-arrest facts that would have notified the defendants that the charges against Baldeo were baseless.

Moreover, even if the arrest had been unlawful, "the intervening exercise of independent judgment" by prosecutors would break "the chain of causation between a police officer's unlawful arrest and a subsequent" malicious prosecution "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).[4] Here, the complaint alleges that the defendants "did not make a complete and full statement of facts to the District Attorney," that they "withheld exculpatory evidence from the District Attorney," and that they "were directly and actively involved in the initiation of criminal proceedings." Compl. ¶¶ 41–43. But those

---

[4] In *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), the Second Circuit questioned *Townes,* stating that "[e]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." *Id.* at 352. But nearly seven years later, in *Wray*, the Second Circuit assuaged the doubts it expressed in *Zahrey*:

> In *Zahrey*, we posed the question why an "initial wrongdoer" may escape the reasonably foreseeable consequences of his actions. It is always possible that a judge who is not misled or deceived will err; but such an error is not reasonably foreseeable, or (to use the phrase employed in *Zahrey*, 221 F.3d at 350–51) it is not the "legally cognizable result" of an investigative abuse.

490 F.3d at 195.

9

statements are not specific enough to pass muster under *Twombly* and *Iqbal*. Baldeo never states what facts the defendants failed to tell the D.A., what exculpatory evidence they withheld, or how they were directly and actively involved in initiating the proceedings. Baldeo's conclusory statements are not enough to establish a causal link between the defendants' wrongful actions and any malicious prosecution. *See King v. City of New York*, 12-cv-2344 & 13-cv-0037, 2014 WL 4954621, at *22 (E.D.N.Y. Sept. 30, 2014).

Finally, in his opposition to the City Defendants' motion, Baldeo has not responded to any of their arguments regarding his malicious-prosecution claim, thereby abandoning it. *See, e.g.*, *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010).

### D. Detective Barnard is entitled to qualified immunity.

Even if Detective Barnard did not have probable cause, he would still be entitled to qualified immunity. Officers are immune from false-arrest and malicious-prosecution suits when "it was objectively reasonable for the officers to believe they did have probable cause." *Zellner*, 494 F.3d at 369; *see also Betts*, 751 F.3d at 83. In other words, for the purpose of qualified immunity, it does not matter whether the officers *actually* had probable cause; the question is just whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Zellner*, 494 F.3d at 369 (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)). Or, put more pithily, the officer just needed "arguable probable cause." *Id.* As discussed, Detective Barnard had a victim-complaint and significant corroborating

10

evidence. Under such circumstances, an objectively reasonable officer could have believed probable cause existed. Accordingly, Detective Barnard is entitled to qualified immunity.[5]

I explained earlier the irrelevance to the probable cause inquiry of Detective Barnard's alleged admission that he believed the paperwork was not stolen. That admission is also irrelevant with respect to qualified immunity. As the Supreme Court explained in finding an officer entitled to qualified immunity, an officer's "own evaluation does not answer the question whether it would have been unreasonable for an officer to have reached a different conclusion from the facts" presented to him. *Messerschmidt v. Millender*, 565 U.S. 535, 551 n.6 (2012); *see also id.* ("[The officer's] belief about the nature of the crime . . . is not *information* he possessed but a *conclusion* he reached based on information known to him.").

E. *Baldeo claims against Lieutenant Potenza fail.*

The City Defendants also seek to have all claims dropped against Lieutenant Potenza, arguing that the complaint fails to sufficiently demonstrate his involvement in any of the alleged violations. Personal involvement is required to hold a defendant liable under § 1983. *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). Here, Baldeo alleges only that Lieutenant Potenza, along with Detective Barnard, received the paperwork from Baldeo and then subsequently interrogated, falsely accused, and humiliated him. Compl. ¶¶ 22–23. To the extent that such conduct constitutes sufficient personal involvement to trigger liability under § 1983, *see Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 399 n.1 (S.D.N.Y. 2015), it ultimately fails for all the reasons discussed earlier with respect to Detective Barnard. And once again, Baldeo has not

---

[5] In opposing the City Defendants' argument that Detective Barnard is entitled to qualified immunity, Baldeo only argued that *no* probable cause existed; he did not address whether *arguable* probable cause exists, seemingly abandoning the argument. Yet the City Defendants, despite arguing in their reply that Baldeo abandoned a number of specific arguments, surprisingly did not mention Baldeo's failure to challenge their qualified immunity argument. But I won't get too caught up in these issues of abandonment—and abandonment of abandonment—because, as explained, Detective Barnard ultimately wins on the merits.

11

responded to any of the City Defendants' arguments concerning Lieutenant Potenza, thereby abandoning his claims against him.

F. *Baldeo's § 1983 claims against the City fail.*

A municipality cannot be held liable under § 1983 if there was no independent, underlying constitutional violation by its officers. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, because I have held that the officers here did not falsely arrest or maliciously prosecute Baldeo, the City of New York cannot be held liable under § 1983. And even if the officers had committed constitutional violations, a plaintiff seeking to hold a municipality liable under § 1983 must show that the "commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Here, Baldeo does not allege any specific facts to support such a claim; all he provides are conclusory statements—for instance, "[t]he acts . . . were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the City of New York." Compl. ¶ 34. That will not do. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (explaining that, under *Twombly* and *Iqbal*, the plaintiff must offer sufficient factual detail to support such a claim, not simply "boilerplate allegations of unconstitutional policies and practices").

G. *Baldeo's general deprivation of rights claim fails.*

In addition to specifically asserting claims of false arrest and malicious prosecution under § 1983, Baldeo has also asserted a general claim of "deprivation of rights" under § 1983. *See* Compl. ¶¶ 30–35. In moving to dismiss the complaint, the City Defendants have not addressed this general claim. Nor has Baldeo mentioned it in his opposition. In any event, "[s]uch general

12

allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give 'fair notice of what the claim is and the grounds upon which it rests.'" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268–69 (S.D.N.Y. 2010) (quoting *Sforza v. City of New York*, 07-cv-6122, 2009 WL 857496, at *12 (S.D.N.Y. Mar. 31, 2009)).

### H. Baldeo's § 1985 conspiracy claim fails.

A plaintiff alleging a conspiracy claim under § 1985 must show: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). Moreover, a § 1985 "conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

The City Defendants argue that Baldeo has failed to allege any of those elements beyond the sole, conclusory statement that "[d]efendants conspired to deprive Plaintiff of the aforementioned constitutional rights." Compl. ¶ 49. I agree that Baldeo's complaint does not allege the elements of a § 1985 conspiracy claim aside from that one, conclusory allegation. *See Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). Moreover, as with his malicious-prosecution claim, Baldeo has failed to respond to the City Defendants' arguments concerning his conspiracy claim, thus abandoning that claim as well.

13

*I. I decline to exercise supplemental jurisdiction over Baldeo's state-law claims.*

Because I dismiss Baldeo's federal claims, I decline to exercise supplemental jurisdiction over his remaining state law claims, and I dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304–06 (2d Cir. 2003).

*II. Baldeo's motion for a default judgment against Keiser.*

Unlike her fellow defendants, Keiser has failed to answer or otherwise defend this action. Pursuant to Rule 55(b), the Clerk entered a default against her. ECF Dkt. No. 14. And now Baldeo moves for a default judgment. ECF Dkt. No. 16. However, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam). I am required to "accept[] as true all of the factual allegations of the complaint, except those relating to damages," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), but I am "also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Mickalis Pawn Shop*, 645 F.3d at 137.[6]

Baldeo's claims against Keiser under 42 U.S.C. § 1983 cannot be sustained. Conduct triggering liability under § 1983 "must have been committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Hence, § 1983 does not apply to "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)

---

[6] I have previously criticized this standard as making the "case or controversy . . . principally between a plaintiff and the judges deciding the case." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 119 (2d Cir. 2015) (Korman, J., concurring in part, dissenting in part). My view, however, was not that of the majority. *See id.* at 116 n.17.

(quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). To hold a private actor liable under § 1983, the plaintiff "must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). The private actor must be "a willful participant in join activity with the State or its agents." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

Here, Baldeo has failed to allege any specific facts demonstrating that Keiser "was a willing participant in [a] scheme" with the police. *Friedman v. New York City Admin. for Children's Servs.*, 04-cv-3077 (ERK), 2005 WL 2436219, at *8 (E.D.N.Y. Sept. 30, 2005). As many courts have made clear, "there is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment." *Hannibal v. Sanchez*, 13-cv-640 (ERK), 2014 WL 3845172, at *5 (E.D.N.Y. Aug. 5, 2014) (quoting William L. Prosser, *Law of Torts* 47 (4th ed. 1971)); *see also Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). While I have previously held that "a defendant who causes an unlawful arrest or prosecution may be held responsible civilly *if he does so by maliciously providing false information*," *Friedman*, 2005 WL 2436219, at *8 (emphasis added), Baldeo has not adequately alleged that such was the case here beyond conclusory allegations. *See* Compl. ¶¶ 24, 31, 33, 35, 45, 49. If anything, the alleged facts undermine the idea that Keiser provided false information to the police maliciously, as Baldeo himself admits that there *was* a break-in and that he *did* possess many of the allegedly stolen items. Baldeo's complaint insufficiently establishes that Keiser acted under color of state law. She thus cannot be held liable under § 1983.

Baldeo is also not entitled to judgment against Keiser under 42 U.S.C. § 1985. As discussed, he has not alleged any facts to support such a claim aside from one conclusory

sentence: "Defendants conspired to deprive Plaintiff of the aforementioned constitutional rights." Compl. ¶ 49. In sum, Baldeo has failed to provide adequate factual allegations to support his federal claims against Keiser. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) (per curiam). All that remain are his state law claims, over which I decline to exercise supplemental jurisdiction and which I dismiss without prejudice. Baldeo's motion for a default judgment must therefore be denied.

## Conclusion

The City Defendants' motion to dismiss is **GRANTED**, and Baldeo's motion for a default judgment against Defendant Keiser is **DENIED.** Accordingly, Baldeo's complaint is **DISMISSED** as to all defendants. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Brooklyn, New York                                             *Edward R. Korman*

August 6, 2018                                                 Edward R. Korman
                                                               United States District Judge